IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:13-cr-00048 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| CHARLES WARD | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's "Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)" (Doc. No. 88, "Motion"), whereby Defendant argues that his medical conditions and advancing age render him eligible for a sentence reduction. The Government filed a sealed response in opposition to the Motion (Doc. No. 98, "Response"), to which Defendant filed a reply (Doc. No. 101, "Reply"). Three months after the filing of the Reply, Defendant (rather than counsel from the Federal Public Defender's Office, who had filed the Motion and the Reply), filed pro se a "Supplemental Brief," which serves to raise new arguments that were not included in the Motion. (Doc. No. 104).

For the reasons set forth herein, the Court agrees with the Government that Defendant has not established any extraordinary and compelling reason for early release, as required for release under 18 U.S.C. § 3582(c)(1)(A). Accordingly, Defendant's Motion is DENIED.

PROCEDURAL BACKGROUND

On March 6, 2013, Defendant was charged in a one-count indictment, charging possession of a firearm subsequent to a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Doc. No. 1). Defendant was found guilty by a jury on December 10, 2013. (Doc. No. 44). As the

Government accurately describes, the summary of proof at trial contained in the Presentence Investigation Report regarding the incident of possession constituting the offense:

> Specifically, [Defendant] lifted his shirt to show a loaded gun to a man during a confrontation. When this man retrieved another person who yelled at [Defendant], [Defendant] pulled out the gun and pointed it at both of them. When law enforcement arrived, [Defendant], who was walking down the street, threw a loaded Bryco 9 mm pistol to the ground.

(Doc. No. 69 at 2) (citation omitted). As described by the Sixth Circuit when it later affirmed his conviction and sentence:

> The district court calculated the advisory guidelines range as 262 to 327 months of imprisonment based on a total offense level of 34 and a criminal history category of VI; [Defendant] qualified as an armed career criminal under 18 U.S.C. § 924(e) and USSG § 4B1.4. After considering the sentencing factors under 18 U.S.C. § 3553(a) and argument from counsel, the district court sentenced [Defendant] to 262 months of imprisonment, at the bottom of the guidelines range.

(Doc. No. 60 at 1) (information copy of Sixth Circuit order affirming conviction and sentence, Sixth Circuit Case No. 14-5308). In affirming the sentence, the Sixth Circuit noted:

> The district court's comments at sentencing demonstrate that it considered the relevant statutory sentencing factors in choosing [Defendant's] sentence. The district court acknowledged [Defendant's] arguments that his age and health issues warranted a downward variance but explained that a downward variance was not warranted due to [Defendant's] extensive criminal history. Instead, the district court concluded that those considerations warranted a sentence at the low end of the guidelines range. The record does not demonstrate any error with respect to the procedural or substantive reasonableness of [Defendant's] sentence.

*Id.* at 3.

On April 26, 2020, Defendant filed his first motion for compassionate release, asserting that the COVID-19 pandemic, and his heightened risk of severe complications based on his age and underlying medical conditions, constituted an extraordinary and compelling reason to justify a reduction of his sentence. (Doc. No. 63). He also argued that the 18 U.S.C. § 3553(a) factors supported a reduction of his sentence, citing (1) his statistically low risk of recidivism based on

his age, and (2) his performance in prison. (*Id*. at 12-13). Denying Defendant's motion for compassionate release, this Court found that even if Defendant had met his burden to show extraordinary and compelling reasons, (i) he still would be ineligible for compassionate release because could not meet his burden under U.S.S.G. § 1B1.13(a)(2) to show that he is not a danger to other persons or the community; and (ii) even if he was *eligible* for compassionate release, he was not *entitled* to compassionate release—and would get it only if the 3553(a) factors cut in Defendant's favor, in view of the Court in its discretion. (Doc. No. 75). Defendant filed a second motion for compassionate release, based again upon Defendant's age, medical conditions, and COVID-19, but he offered nothing to prompt this Court to change its prior conclusion. (Doc. No. 81). Accordingly, this Court denied Defendant's second motion for compassionate release. (Doc. No. 82).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

The Motion is a motion for so-called "compassionate release," but it is worth setting aside that moniker temporarily to clarify the precise nature of a motion under Section 3582(c)(1)(A). It is a motion for a reduction in sentence including, but not limited to, reductions that would result in the defendant-movant's immediate release.[1] And as it happens, in the Motion, Defendant argues

---

[1] A motion under Section 3582(c)(1)(A) is a motion for a reduction in sentence, including but not limited to reductions that would result in the defendant-movant's immediate release. The granting of a motion for sentence *reduction* under Section 3582(c)(1)(A) would not necessarily result in the defendant's immediate *release*. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020) (quoting *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 at *4 (D. Neb. Nov. 14, 2019)). Nevertheless, such motions generally are known as ones for "compassionate release." *Id.* at n.2 ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020). This reflects the fact that they typically do seek immediate release rather than a mere reduction in sentence that would result in an earlier release someday but not immediately.

that his medical conditions and age warrant an immediate release from incarceration. (Doc. No. 88 at 3, 7).

Before the Court can reach the merits of this request, it must first determine that Defendant exhausted his administrative remedies. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The exhaustion requirement is satisfied when a prisoner has fully exhausted with the prison all administrative rights to appeal *or* waited thirty (30) days after the prisoner's first request for compassionate release to the prison. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d 831 at 833–34. It is a defendant's burden to show he has exhausted administrative remedies and is entitled to compassionate release. *United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. May 1, 2020) (citations omitted); *United States v. Faraj*, No. 2:13-CR-20564-01, 2021 WL 1857190, at *1 (E.D. Mich. May 10, 2021) (citation omitted).

Defendant here claims he requested a sentence reduction from his warden on March 1, 2020, August 21, 2021, and October 16, 2023. (Doc. No. 88 at 5). With no dispute from the Government that Defendant has satisfied this requirement. (Doc. No. 98 at 8), the Court finds that Defendant has exhausted his administrative remedies, and that it may proceed with determining whether to grant compassionate release to Defendant.

To grant compassionate release, the Court must: (1) find that "extraordinary and compelling reasons merit a sentence reduction"; (2) find "that the reduction is consistent with 'applicable' Sentencing Commission policy statements"; and (3) determine that the factors in Section 3553(a), to the extent they apply, are consistent with granting the defendant the requested relief. *Jones*, 980 F.3d at 1106 (quoting *United States v. Ruffin*, 978 F.3d 1000, 1003-06 (6th Cir. 2020)). A motion for compassionate release may be denied when any of these three requirements is not met. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). And the defendant bears the

burden to persuade the Court that compassionate release is appropriate. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020).

### *Extraordinary and Compelling Reasons*

Effective November 1, 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13, revising the Sentencing Commission's policy statement as to what may count as an extraordinary and compelling reason for relief, *regardless* of who files the motion. To grant a motion for compassionate release, a court now must find not only that all elements of the compassionate-release standard are satisfied, but also that granting such relief "is consistent with" Policy Statement 1B1.13, which sets forth a list of circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist. *See* 18 U.S.C. § 3582(c)(1)(A). Those enumerated circumstances under § 1B1.13 are as follows:

> (1) certain medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) defendant, while in custody, becoming the victim of certain sexual or physical abuse committed by or at the direction of a correctional officer; (5) any other circumstance or combination of circumstances that, when considered by themselves or together with any of the four just-listed circumstances, are similar in gravity to those circumstances; and (6) the defendant having received an unusually long sentence.

U.S.S.G. § 1B1.13. Here, Defendant argues that his medical circumstances, under § 1B1.13(b)(1) and his age, under § 1B1.13(b)(2), warrant his immediate release. (Doc. No. 88).[2]

---

[2] Defendant also argues, in his Supplemental Brief, that he "stands actually-innocent" of his Armed Career Criminal Act (ACCA) enhancement because of *United States v. Taylor*, 142 S. Ct. 2015 (2022), which (according to him) removes Defendant's 1982 and 1995 Tennessee Robbery offenses as valid predicate offenses for purposes of the ACCA. (Doc. No. 104 at 3) (internal quotations omitted). Defendant further argues that without this enhancement his sentence would be reduced to time served (or in the context of compassionate release, Defendant argues—from what the Court understands—that his usually long sentence is an extraordinary and compelling reason for release). (*Id*.).
    In *Taylor*, the Supreme Court weighed whether attempted Hobbs Act robbery (in violation of 18 U.S.C. § 1951) qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(1)(A) (which, among other things,

(1) Medical Circumstances of the Defendant

Raising almost the same medical conditions as in previous motions for compassionate release, Defendant argues that his medical circumstances warrant immediate release, because according to Defendant his health continues to deteriorate due to aging and the prison cannot adequately manage his conditions. (Doc. No. 88 at 4; 101 at 2). More specifically, Defendant points to U.S.S.G. § 1B1.13(b)(1)(B)(i) and/or (ii), as his basis for an extraordinary and compelling reason. (Doc. No. 88 at 3).

After the 2023 amendment to the Guidelines, Defendant's medical circumstance can give rise to an extraordinary and compelling reason, under § 1B1.13(b)(1)(B)(i) or (ii), if Defendant is

---

criminalizes (and prescribes a mandatory minimum prison sentence for) using or carrying a firearm during and in relation to any crime of violence or drug trafficking crime).

Defendant was charged and convicted under 18 U.S.C. § 922(g)(1), which invokes an entirely different subpart of section 924 (i.e., section 924(e)(1), which states that "[i]n the case of a person who violates Section 922(g) of this title and has three previous convictions by any court referred to in Section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).") So the applicability of Section 924(e) turns (in part) on whether the defendant has *prior convictions* for "violent felonies," while the applicability of Section 924(c)(1) turns (in part) on something very different—whether the defendant's current conviction is for a "crime of violence." And the sentencing ranges for a violation of 18 U.S.C. § 922(g)(1) do not implicate Section 924(c)(1) at all. Thus, the subpart of Section 924 upon which Defendant bases this argument —Section 924(c)(1), the subpart to which *Taylor* related—was not used in determining his sentence and thus, contrary to Defendant's argument, simply does not apply here. And even if a decision (like *Taylor)* that addresses whether a particular crime qualifies as a "crime of violence" could be deemed probative of whether that crime qualifies as a "violent felony," *Taylor* would not be probative here because it addressed only the crime of attempted Hobbs Act robbery and not robbery under Tennessee law.

Defendant also asserts in his Supplemental Brief that a memorandum issued by (former) U.S. Attorney General Garland, in which he offers guidance on charging defendants, mandates that statutory minimum sentences are not to be used, and thus Defendant "could not have been sentenced to no more than 10 years of imprisonment, and if sentenced TODAY would amount to a 'time served.'" (Doc. No. 104 at 12; 104-1 at 2-7). An opinion issued by the Attorney General is not binding on this Court. Moreover, this memorandum does not impact imposed sentences, as Defendant suggests; rather, it gives (suggested) *guidance* to *federal prosecutors*—not the Court—when making decisions on charging, plea agreements, and sentencing recommendations.

(i) suffering from a serious physical or medical condition or (ii) suffering from a serious functional or cognitive impairment. *See* U.S.S.G. § 1B1.13(b)(1)(B). There is no argument or evidence in the Motion or Supplemental Brief that § 1B1.13(b)(1)(B)(ii) is applicable here. Thus, it seems to the Court that Defendant's argument is centered on § 1B1.13(b)(1)(B)(i).

Defendant provides a plethora of medical conditions from which he alleges he is suffering. Some of these were documented at the time of his sentencing (i.e., three-vessel coronary artery bypass surgery, after which he reportedly suffered from high blood pressure, hepatitis C, and liver damage). (Doc. Nos. 88 at 3-4; 54 at 20). The Court therefore considered these medical conditions when it imposed sentence, and what's more concluded that these conditions supported a sentence at the low end of the guidelines range. (Doc. No. 60 at 3). Those same medical conditions do not now constitute or even contribute towards an extraordinary or compelling reason warranting relief.

In his Motion, Defendant describes various "new" conditions, or conditions that have arisen since his sentencing,[3] (with an emphasis on prostate and colon issues) that purportedly warrant relief. (Doc. No. 88 at 3-4). But in reviewing the medical records before the Court, it appears that these conditions—and the severity of them—remain the same as when Defendant previously requested a sentence reduction (Doc. Nos. 75 and 82). And as it determined previously, the Court finds now that Defendant's medical conditions do not constitute a serious deterioration in physical health for purposes of § 1B1.13(b)(2).

On the contrary, the record shows that Defendant's conditions are manageable, if not improving. *See e.g.*, Doc. No. 98-2 at 1 (providing that Defendant continues to remain stable

---

[3] In its review of Defendant's medical records, he *presently* treats for: prediabetes (with improvement); low cholesterol; unknown prostate issues; "malignant neoplasm" of prostate (which the Court understands to refer to a cancerous tumor); "coronary atheroscler, native coronary art of trans" (which the Court understands to describe buildup of plaque in the native coronary arteries of a new heart transplant); and high blood pressure. (Doc. No. 98-1 at 17-21).

without recurrent prostate symptoms); (Doc. No. 98-1 at 4-5) (a report from Defendant's May 5, 2023, BOP health visit, describing Defendant as "appears well, alert and oriented" and denoting respiratory and cardiovascular as within normal limits). This is even more apparent as Defendant remains able to manage his conditions by taking prescribed medication or seeking medical attention as needed. (*See* Doc. No. 98-1, *generally* and 4) ("[Defendant] reports taking his meds as prescribed and eating from the commissary foods that he purchases").

And despite Defendant's argument that the Bureau of Prisons ("BOP") cannot manage his ailments (Doc. No. 88, 101 at 2), it seems clear from Defendant's medical records that his conditions are being "actively monitored." (*See generally,* Doc. No. 98-1). In his Reply, Defendant argues that his complaints of uncontrolled urination in May 2023 and lack of colonoscopy demonstrate that his colon and prostate issues are not "actively monitored." (Doc. No. 101 at 2). Yet there are notes in the medical records before the Court that would indicate the opposite. (Doc. No. 98-1 at 1, 2, 7) (a note, dated June 27, 2023, providing that an "[u]rology consult approved"[4]; a note dated May 5, 2023, denoting "malignant neoplasm of prostate" as being assessed; a note, dated October 7, 2022, stating that "[Defendant] has a [history] of hemorrhoids, colonoscopy done in 2017 which recommended repeat colonoscopy in 5-10 years for screening purposes."). The Court would certainly say, based on its review of the records, that Defendant's prostate and colon health are being actively monitored.

---

[4] In his Motion, Defendant seems particularly distressed over the need to schedule an outstanding urology appointment due to his complaint of frequent and at times uncontrollable urination. (Doc. No. 101 at 2). Notably, the Court has medical records only from 2023 or earlier, so it is unaware whether circumstances have changed or whether a urology consult was scheduled or occurred. But the Court perceives nothing in the records before it, or in Defendant's Motion, showing that Defendant made any effort to schedule or request a urology consult.

As previously stated, Defendant bears the burden of showing that extraordinary and compelling reasons warranting his release exist. He makes no showing that the medical conditions are severe or debilitating, or that they are qualitatively different now than they were when he was sentenced. Moreover, the Court has no basis to believe that Defendant would be in a better position outside of prison to care for his conditions, considering that he has no formal plan on how he will obtain and afford private health insurance, and that he plans to seek part-time employment (which typically does not offer health insurance). (Doc. No. 104 at 15).

Thus, the Court finds that Defendant has shown no extraordinary and compelling reasons, under § 1B1.13(b)(1)(B), for a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A).[5]

(2) Age of Defendant

Defendant argues that the Court should find an "extraordinary and compelling" reason for a sentence reduction because Defendant is over 65 years of age and experiencing serious deterioration in health because of the aging process. (Doc. No. 88 at 4). To bolster his argument,

---

[5] In addition to making the arguments discussed above, Defendant argues in his Supplemental Motion that the harsher conditions of incarceration during the COVID-19 pandemic is an extraordinary and compelling reason for release. (Doc. No. 104 at 9). As previously held by this Court, the availability of a COVID-19 vaccine forecloses this argument. (Doc. No. 82 at 3). COVID-19 vaccines are available to all federal prisoners, including Defendant. *See, e.g., Oversight of the Federal Bureau of Prisons: Hearing Before the S. Comm. on the Judiciary*, 117 Cong. (2021) (statement of Michael D. Carvajal, Dir. Fed. Bureau of Prisons). *See also United States v. Ward*, No. 3:13-CR-00048, 2021 WL 6066447, at *3 (M.D. Tenn. Dec. 22, 2021) (Richardson, J.). "[W]ith access to the [COVID-19] vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Defendant does not indicate his COVID-19 vaccination status in his Motion; however, just by having access the COVID-19 vaccine while incarcerated forecloses a finding of extraordinary and compelling reasons based on any supposed underlying health conditions. And if Defendant has not been vaccinated, he has failed to advance a "compelling reason" justifying such a failure to be vaccinated, by failing to address the vaccine at all in his Motion. *Id.*

Lastly, Defendant has not shown that early release would ameliorate the risk of COVID-19. It is beyond dispute that persons outside of prison remain susceptible to COVID-19. So, to the extent that Defendant's argument is that he needs to be released into the community to better evade COVID-19, the argument is a non-starter because there is no reason to conclude that his risk of infection from COVID-19 would be materially reduced were he released from prison. *See United States v. Inman*, 583 F. Supp. 3d 1117, 1124 (M.D. Tenn. 2022) (Richardson, J.).

Defendant argues that the time he has already served—approximately eleven years—is sufficient punishment for his "non-violent firearm crime" (Doc. No. 104 at 15-16), and he is statistically unlikely to reoffend based on his age. (Doc. No. 88. at 4, 6).

U.S.S.G. § 1B1.13(b)(2) provides that extraordinary and compelling circumstances exist if the defendant (1) is at least 65 years old, (2) "is experiencing a serious deterioration in physical or mental health because of the aging process," and (3) has served at least 10 years of his term of imprisonment. *See* U.S.S.G. § 1B1.13(b)(2). It is undisputed that Defendant at least 65 years old and has served at least ten (10) years of his term of imprisonment, which means that the only requirement under consideration by this Court is: "serious deterioration in physical or mental health because of the aging process."

It is worth emphasizing that, as written, U.S.S.G. § 1B1.13(b)(2) requires that deterioration in a defendant's health occur *because of* the aging process.[6] Defendant simply has not shown that any serious deterioration in his health has occurred because of the aging process. In fact, it seems that Defendant argues that his conditions are deteriorating because of inadequate management by the BOP; that argument, which the court effectively has addressed and rejected above, is separate from and in fact in tension with his argument here under U.S.S.G. § 1B1.13(b)(2). And even if it could be said that Defendant's aging caused some deterioration in his health, it cannot be said on

---

[6] To illustrate, one example of this arises out of a district court in Montana, where an 81-year-old defendant, held in custody for over ten years, had medical records making clear that he was experiencing a serious decline in his physical health that impairs his ability to care for himself and perform activities of daily living. *United States v. Cunningham*, No. CR 12-60-GF-BMM, 2024 WL 50908, at *2–3 (D. Mont. Jan. 4, 2024). The defendant there suffered from advanced degenerative changes, indicating "bone on bone" osteoarthritis, in his knee, which impacted his activities of daily living with decreased range of motion, abnormal gait, and difficulty ambulating. (*Id.*) Additionally, that defendant's medical records demonstrated that he experienced seizures that put him at heightened risk of falling, and indeed, had fallen twice, requiring visits to the emergency room and one of which resulted in a fracture of his spine that required surgical intervention; he experienced a significant decrease in his ability to hear; and he developed a right inguinal hernia. (*Id.* at *3). All of this was in conjunction with cognitive disorder, hypertension, polyneuropathy, hypertrophy of his prostate, chronic kidney disease, and an enlarged and painful testicle that fills with bloody fluid. (*Id.*)

the instant record that Defendant is experiencing a *serious* deterioration in his health because of the aging process as require to justify release under U.S.S.G. § 1B1.13(b)(2). Defendant provides no evidence of a rapid decline in health and wellness. And while Defendant may be battling various conditions, none of them, whether separately or in the aggregate, qualify as "extraordinary and compelling" because they are manageable and controllable with medications or other treatments already available to Defendant.

But assuming *arguendo* that Defendant has met the criteria of U.S.S.G. § 1B1.13(b)(2), the Court would still deny Defendant's Motion based on the 18 U.S.C. § 3553(a) factors. The sentencing factors set forth in Section 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
        i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
        ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
    B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). When balancing Section 3553(a) factors, this Court has "substantial discretion." *United States v. Wright*, 991 F.3d 717, 719 (6th Cir. 2021). A district court acts within its discretion in denying compassionate release on the basis of the defendant's underlying offense and criminal history. *United States v. Smith*, 2022 WL 18144101, at *2 (6th Cir. Dec. 16, 2022) ("[W]e have repeatedly held that a district court does not abuse its discretion when it denies compassionate release based on the seriousness of the underlying offense and the defendant's criminal history.").

Defendant argues that his serving over ten years of his sentence (for what he describes as a "non-violent firearms offense"), his age, and his conduct while incarcerated all call for immediate release. (Doc. No. 88 at 7). The Court applauds any incarcerated defendant, including Defendant, who demonstrates serious efforts to rehabilitate themselves while serving their sentence. But in this instance, Defendant's efforts at rehabilitation do not overcome the need to protect the public from further crimes that could be committed by Defendant. It is true that age 67 is associated statistically with a reduced risk of recidivism, but so is age 56 by all accounts (albeit presumably to a lesser degree), and Defendant committed the instant offense despite being (within a month of) that age. Defendant posed great danger to many persons for approximately *forty* (40) *years*, and the Court is unconvinced that this danger would not manifest itself if Defendant were released, especially given that his plan is to reside with his son (Doc. No. 104 at 14),[7] who is a convicted felon on release (presumably parole) from a ten-year sentence. This arrangement would raise, rather than lower, the risk of recidivism—a reality reflected by the standard condition of supervised

---

[7] The Court is aware that Defendant attached a letter from a friend, pastor William Houston (Doc. No. 88-2); however, in his Supplemental Brief, Defendant provides that he would reside with his son upon release. (Doc. No. 104 at 14). Pastor Houston is not mentioned in this later filing, and so it would appear that Defendant is accounting for a change in plans between the Motion (dated October 23, 2023) and the Supplemental Brief (dated February 16, 2024).

release (imposed on Defendant in this case) that the defendant does not associate with any felon absent the probation officer's approval.

As for Defendant's time served (roughly 160 months of a 262-month sentence, by the Court's calculation), the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct cuts against Defendant. In the Court's view, there is little doubt that the amended sentence Defendant now seeks would result in a very disparately low sentence compared to defendants convicted of (relatively) similar conduct with similar criminal history. Defendant's sentence was at the bottom of the guideline range. And even though it was imposed under a non-mandatory (i.e., post-*Booker*) guideline range, the Court can and here does perceive that a revised sentence only somewhat beyond halfway to the bottom of the guideline range poses a substantial risk of sentencing disparity when compared to more healthy offenders who are similarly situated. It would be unwarranted for healthy similarly situated inmates to serve at least a decade more than Defendant just because (perhaps, in some cases, to their great credit) they are healthy. Likewise, it would be unwarranted for a young and immature offender to serve at least a decade more than Defendant merely because Defendant was older (because he had not learned from decades of serious consequences from the criminal justice system) when he committed his offense. For these reasons, the Court finds that granting compassionate release would result in a sentence that runs afoul of this sentencing factor.

Therefore, in summary, the Court finds that section 3553(a) factors, including, but not limited to, Defendant's history and characteristics, the need to protect the public from further crimes committed by Defendant, and the need to avoid unwarranted sentencing disparities, all weigh against release.

CONCLUSON

The Court has considered, as it must, the circumstances (including Defendant's age, the status of his medical conditions, COVID-related conditions within his prison, and amount of time he has served on the instant sentence) as they exist at present as shown by the record, and not as they have existed or may exist in the future. The Court finds that Defendant has not shown any extraordinary and compelling reasons for release under 18 U.S.C. § 3582(c)(1)(A). And even if Defendant met the elements under U.S.S.G. § 1B1.13(b)(2), the section 3553(a) factors do not weigh in favor of Defendant's release. Accordingly, Defendant's Motion (Doc. No. 88), and the related Supplemental Brief (Doc. No. 104), are **DENIED**.

    IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE